grew up thinking of him as what a federal judge is. Judge Jill Pryor had a family matter come up and she is not going to be here for the argument this morning. I can tell you that she had fully prepared for the argument. She has given me questions that she would like to have the litigants answer this morning. She is going to listen to the audio of the arguments today and then the three of us will convene to conference the cases shortly, I think tomorrow actually. So I regret that she's not with us but in many ways she is with us because she's read and prepared and I've got her questions. My clerk put my papers on the wrong side so let me let me get I hope it's only my back wrong so All right, I know you all are familiar with our lighting system when the red light comes on. If you could wind it up we'd be grateful. So with that I'll call the first case, the United States of America versus David Ryan Alberts. Good morning. May it please the court. My name is Steve Langs. I'm with the Federal Defender's Office in Orlando. I'm very happy that I'm assisted by Rosemary Cackness this morning. I represent David Alberts in this matter and I would submit, Your Honors, that this appeal is what I would consider positioned within the uncertain framework of sufficiency. I think the target here is the appropriate application of the guideline enhancement 2G 2.2b5. In this instance the district court accepted a presentation of what Mr. Alberts had apparently told investigating authorities as well as the probation office at face value is our position and applied a five-level enhancement and by doing so that effectively doubled up what we would consider Mr. Alberts' appropriate guideline range. In this instance we would submit that his overall guideline calculation should have been a total offense level of 28 and criminal history category of 1 and a suggested prison range of 78 to 97 months which is effectively six and a half to eight years. So my understanding of the record is you didn't object to the facts in the pre-sentence report. So what we're arguing about this morning is the application of the law to those facts. Is that, am I right about that? I think, Your Honor, that we or the trial attorney in this instance did not object to the content of the FBI. That's what he told the probation office. That's what he said. The objection in this instance I think is the substantive accuracy of what he said. So we don't have an issue that yes those were his statements. What we do have an issue with in this what we consider a fact-specific issue is the substantive accuracy of what he said. Is what he said true? Did it actually happen? Was it there? I'm not sure that I recognize that argument in your brief. Your, as I recall, your brief argued that as a matter of law you can't apply it when it was so long ago and I think you really acknowledge that that's foreclosed by our Turner case. And then you argue that the pattern should not apply because it was when he was a juvenile. He was under 18 and that is a matter of first impression in our court. But the second, third, eighth, and now recently the sixths have held that that does apply even though he was a minor. And then you made some arguments about his, well I see you did argue that his own admissions were insufficient but not but because they weren't corroborated. That's what you argued in your instance. There was no corroboration. There was no additional information. There was nothing that buttressed his statements. So the illustrative point that I referenced in my brief is United States or OPERA versus United States. This notion that we, as the words I'll use here, as a holistic or an organic effort to sentence an individual. What is it that we need? What is sufficient? What is reliable? What is competent? What is going to lend us confidence in handling and disposing of a human being under these circumstances? If I take a step back, my point of view, at least in my time standing next to individuals in these types of situations, are federal sentencing has two components. There are two questions that we have to answer and it's awfully difficult for the trial court to do this. The first question is, well what is it that the person did wrong? What is it that David Alberts did wrong? Well in this instance we know what he did. He admitted to that. He received and possessed child pornography. So now we know what he did wrong. The more telling and more significant and more difficult question to answer is, well what are we going to do about it? Well we've tried to structure a process in which to try and help the district courts to help it, them, decide that question. The first step obviously is the appropriate guideline calculation. Now 2G2.2 is awfully involved. It has a number of enhancements and the one enhancement here is B5. Was there a pattern of sexual exploitation? And the one source of evidence that we have that the district court in this instance relied on were the statements of Mr. Alberts. Well it is true, but it was not just his statements to law enforcement. He later made the same statements to the probation officer and even at the plea bargain he made the same statements and he did not object to those statements in the PSR so that it seems to me it wasn't a situation of having confessed a single time to the officers in investigating, but they were repeated assertions that that was the truth and this is not something vague. It had to do with specific instances of past conduct. Is that not true? I would submit that if we look at the sentencing case number 6, for the record down between line 17 and 25, the trial attorney did that. She raised a couple of issues of which to try to answer your specific observation, Judge Anderson. She says that one, I think the fact that he himself was a minor and two, that the facts of the case at best are vague and not corroborated or were investigated. Does not rise to the level of the application in this challenging the substance of what Mr. Alberts said because if we look at the totality of the circumstances I think I would start with number one, the government's notice of essential elements. It has language in that change of plea hearing, a document if you will. Two, at paragraph 13, I believe in the pre-sentence report it has one version of the statements. Paragraph 25 has a second version of his statements and then in the addendum, the probation officer recites another version of what Mr. Alberts said at paragraph one of the addendum. So throughout, there really is a notion of well what exactly are you saying? Did you admit to one incident? Did you admit to a second incident? Did you admit to a number of incidents? What exactly is going on here? Particularly, the notion that we are challenging is the reliability in terms of our standard that the district court is faced with a preponderance of evidence is what exactly happened here because I think the one example I would give in light of what the government has recently submitted in its supplemental briefs, when you read the two cases that it referred to, for example, in both of those cases and in fact in some of the other cases that are out of circuit, in all of those cases factually the government or the probation office did something more. They went out and investigated whether or not what the defendant in those cases said. There was just some degree or modicum additional in terms of what was the defendant saying. So in this instance, we have statements by the defendant. Are they reliable? Especially in the totality of the circumstances of which Mr. Alberts presents here. Here is a man, 45 years old today, having served approximately two years of his tenure sentence, that obviously had a very horrific childhood. He had a very stellar military career, but his domestic situation, his psychological disadvantages, everything that he bears and brings to the table has to be subject to question in this instance, under a preponderance of evidence standard, merely to say that his statements alone are sufficient, reliable, that we can have utmost confidence, meets our standard of due process and notions that yes, as an organic and holistic matter, we can effectively double up this man's guideline range and go from six and a half years up to 11 and give him a sentence of 10 years. We simply would submit that in this case, the district court erred and it did not properly meet the sufficiency or reliability of the preponderance of evidence standard. Thank you. Good morning. Good morning. May it please the court. Jermaine Sider for the United States. The district court here did everything right. It made factual findings that were supported by the record. It applied the pattern enhancement based on the plain language of the guidelines and it determined his advisory guidelines range and then considered all the sentencing factors before it and decided that the mitigating circumstances warranted a downward variance by 15 months. The guidelines here worked exactly as they should. The district court didn't err in relying on Mr. Alberts' statements to the FBI and others and finding that Mr. Alberts had molested his nephew at around the age of four by performing oral sex on him and by molesting his niece. After telling the FBI that he had done all of those things, as this court has pointed out, he repeatedly confirmed those statements. Can I turn you to the legal question that I gather we'll need to decide. I got one more question on this, ma'am. All right, yeah. What do you say about what he just argued a minute ago to the effect that the different versions reported suggest a lack of certainty about what he actually did do? They were not, those were inconsistent statements is our position. He pointed to the fact that, so after he told the FBI that he had done all these things, he had an interview with the probation officer and the probation officer. That's probably some considerable time later. Correct. Well, the probation officer, yes, the initial PSR came up around November and so that was, and his interview with the FBI was in August. So within that three month period, he had an interview with a probation officer in which they were evaluating his acceptance of responsibility. And when the matter of the sexual abuse of the minors came up, he did not say, oh no, I didn't do that. I only did these on one occasion. And so those, they're not inconsistent. What we have here instead is just repeated statements confirming that what he had said to the FBI. And he's never disputed the truthfulness of his statements. And there's no evidence to suggest that they were untruthful. And I want to point the court to his statements also. The court mentioned, um, have you repeated this to the district court at the change of plea hearing? And then again to the probation officer. And there's a third time too. And it's his statements to a psychologist for the purpose of a mental health evaluation. Now that report is sealed and it's not discussed in the party's briefs, but the district court expressly relied on that at sentencing. So we invite the court to look at that report because you will see how that corroborates once again that he committed these offenses. And importantly, those statements were made for the purpose of a mental health evaluation that defense counsel had requested. And requested for the purpose of finding mitigating grounds. And defense counsel submitted that to the court for that purpose. And the court considered it for that purpose. May I add? All right. So we're assuming we're going to decide this question of minority, whether a person who's a minor when they commit this offense is subject to the enhancement under 2G2.2. And I know that the commentary to that guideline refers to 1896 Code 2241. And the Second Circuit walked through all that analysis in the Rheingold case. But in thinking about that, you know, I was a prosecutor myself in the past. It seems like the reference to 2241 would have much broader application in this context than in the context of what cases the government would bring as a criminal prosecution. And what I mean by that is I'm not aware of the government prosecuting minors under 2241 and, you know, particularly in the context of a Romeo and Juliet type situation, a 13-year-old engaging in some sexual act with an 11-year-old. I mean, the government wouldn't ordinarily bring that as a criminal prosecution. The federal government, your office, right? Well. I mean, are you aware of them ever doing that? Yes, we are. The federal government prosecuting a 13-year-old for involvement with an 11-year-old? I don't know if it's in that situation, but it's what, the question is whether the government would prosecute someone under the age of 18. That wasn't my question. Oh. My question relates to what I'm referring to as the Romeo-Juliet situation where there, you know, there's just a couple of years age difference between the two people engaging in the sexual act. I'm not aware of U.S. attorney's offices prosecuting that type of crime. Are you? I don't know of any, but the definition of sexual abuse or exploitation, which Mr. Alberts has never contested that his actions qualify, but it also includes, it's also described not just as conduct described in those federal statutes, but they're also offenses under state law. I understand. I'm just trying to get you to explore with me the idea that this guideline calls on the government to seek enhancements for crimes that the government wouldn't prosecute in the first place. I mean, I think that's right, isn't it? I mean, I'm not, I think that's a reading of the, the appropriate reading of the guideline. Isn't, isn't that right? I think that's just a matter of prosecutorial discretion as to whether the government would bring that case under the circumstances presented before it. But even if the government decided not to, the government would take the position as you do here that that would qualify as a reason to enhance somebody's sentence under 2G2.2. Correct, because that's what the language of the guidelines provide for us, and it covers that conduct. And it's not just, again, the definition of sexual abuse of exploitation, or exploitation, it's not just the conduct described in those federal statutes, but it's also offenses under state law that cover offenses committed by juveniles. And it, and so juveniles can and they do commit these offenses. And it's not just, I mean, we're also talking about threatening someone with death to cause them to engage in sexual acts. We're also talking about buying children. We don't have that here. We don't have that here, do we? No, but I'm talking about, we're talking about the language of the guideline and whether the guideline language definition covers these offenses. What does, what one of those sections, we're talking about 2241 and 2244, 43, excuse me. And one of them talks about children under a certain age, and the other one says that the has to be at least four years old. Is that right? Precisely what they do, do they say? If it's under the age of 12, any sexual activity is covered, there's no limitation. But if the child is, has attained the age of 12 and through the age of 15, then the, then the perpetrator has to be at least four years older, and four years older. And of course, here we're talking about a 16-year-old with a four-year-old. Yes, we are. And do we know how old the niece is? The nephew was four, I believe. And the niece was around that age, too. Okay. And he was around, he was around 16 at the time. Mr. Alberts was. In both situations. Correct. Okay. Correct. And, you know, what we have here is just a straightforward interpretation of this guideline. And the plain, unambiguous language of the guideline does not provide a limitation requiring the defendant to have been at an adult age at the time of committing the sexual abuse or exploitation of a minor. And we know that elsewhere in the guidelines, the commission knows how to make that distinction between offenses committed by the defendant at the time that they're an adult or under the age of 18. And they place limitations based on those distinctions. And the fact that the commission did not do that, and the pattern enhancement here, is just further corroboration of what the plain language shows. I would like to talk about the Tapia situation. Under the Tapia case, would you address that? Is that time to go to that? Sure. For our positions that he has abandoned that issue, Tapia is. Because it is true he didn't raise it in the district code, so we're talking about plain error. But we can address it under the plain error, can we not? If this court finds that he hasn't abandoned the issue. How did he abandon it, other than not raising it below? Well, in his brief, he doesn't make an argument about Tapia. He cites it in a footnote. And this is a procedural error, and it's a footnote in his substantive reasonable. I do recall that. I recall. So, but even if he hasn't waived, if you're correct, that this would be under the plain error review, and he cannot satisfy that standard. Because first, when you read the district court statements, he does address rehabilitation. But I think that when you consider the context, that the defense counsel was arguing that he needed counseling. And he was amenable to counseling. And that was the whole purpose of putting forth that sealed psychologist report. And the court statements don't reflect that. The court was deciding to impose a prison sentence for the purpose of giving him counseling, or the purpose of giving him a rehabilitation. And certainly, he wouldn't be able to show this under the third prong, because even if there was any kind of consideration of rehabilitation for the purpose of imprisonment, he, it is clear that the court's reasons, main reasons, primary reasons for imposing a prison sentence was because of the seriousness of his offense, and because of his criminal history, and because of, or not the criminal history, but the pattern, his history of abusing children. And so he wouldn't be able to obtain relief on that ground. Well, it seemed to me the court was also recognizing that Mr. Alberts himself had been abused as a child. Absolutely. And that is a large part, and as the district court said, that that is why it varied down so much. And so it considered, and it considered all the circumstances before it, and decided that warranted a downer variance. Unless this court has any more questions. Thank you. Mr. Langs, before you get started, I wanted to tell you what Judge Pryor wanted to hear, so you can work it into your argument. If you, she wanted you to distinguish the Second Circuit's case on the, on this topic of minority, it's called the Rheingold case. I'm sure you're familiar with it. You talked about it. And then she wanted to know that if the panel concludes that the district court was proper in its application of the pattern of activity enhancement, then that's the end of your reasonableness of sentence argument, and wanted to know whether you agree with that or disagree with that. I will, I guess, go in reverse order. I think, obviously, Your Honor, we would advocate any issue as best we can in that regard. So, no, even were the panel or this court to find that the district court did not err in application of the five-level enhancement, we would at least posit and ask the court to review for reasonableness and at least preserve that reasonableness or substantive reasonableness argument for further review. I think stepping back a broader application to the presentation thus far in regards to all points, if I can even try to encapsulate my argument here, I would try to narrow, Your Honor, the application that we effectively raised three questions or challenges to the application of 2G 2.2b5. One, the first issue is the insufficiency, as a matter of law, of the evidence that the government offered in support of the five-level application. The only evidence we have are the statements that Mr. Alberts gave in that the psychological report that Dr. Olander gave up. I would suggest that at page four of that report, it's nine pages at page four at the top, again, there would be another version of events of this so-called molestation from before. So, it goes to the court's observation of reliability or consistency, if you will. Are the statements inconsistent? Are they consistent? That's something we submit should have at least been followed up in some regards, some additional degree or modicum of presentation other than merely relying on Mr. Alberts' statements to authorities in this case, simply to try and meet that preponderance of evidence standard. Second, obviously, is the idea of the 30 years that 2G 2.2b5 does not apply to something temporally so extended in this case. Clearly, I recognize the case law on this matter. I raise that, obviously, to preserve it, hopefully, maybe for additional review if we get that far. And finally, the third point is this notion of minor on minor. Should this particular enhancement apply when you have a case of a minor committing an offense against another minor? I submit yes and recognize and acknowledge the plain language, just as in the temporal time argument, does not demarcate or specify or prohibit that type of issue. And what about that 2241 and 43? And that's in the commentary, but we are supposed to take that as law. And it does seem to me expressly contemplates the application to minors, at least under those circumstances, and this situation qualifies. I mean, it's more than four years difference and also under 12. Yes, Your Honor. I recognize it. I acknowledge it. Again, would we not have to say that the commentary was wrong? I guess we can authorize to say that, but I think that's where I'm headed. I mean, I have to make law because if I take that step back, I am an advocate. I subscribe to that school of law that says, what are we trying to do here? What's the purpose of the guideline application? We have an individual here that I submit the district court said posed a danger to the community. He seemed to focus on this notion because of his molestation, because of his background. One of the four pillars of sentencing here, one of them was dangerousness. We had to protect our neighborhood, protect our community, and he looked to take him out by giving him a 10-year sentence. I think in the minor on minor notion here, Your Honor, persuasive case law is against me. I recognize that. The language of the guideline and the commentary are against me, but it appears I couldn't find any other unpublished or published opinion from this court specifically addressing that. So I'm hoping that the purpose behind the enhancement would be sufficient to say, look, in this instance, when we talk about prosecutorial discretion, we're not going after kids. Because again, in this instance, the sentencing transcript from the trial attorney says, look, at best he was 13, 14, 15, not more than 16. So we just don't have reliability as to the statements that Mr. Alberts gave the court. Let me ask you this. As I do recall from what the government said, it is true that you didn't really argue Tapia at all. Why haven't you waived that, abandoned that issue? Failed not only in the district court, but also in our court to bring it up. I think that's practice, Your Honor. I try to go by what is presented in the record below in the court as given by the trial attorney. Language that was submitted to the district court, I think I have to take the record as it comes to me. And in light of, you know, the effort that I tried to put forward, I tried to cover as best I can those issues that at least we would have the court raise in this instance. Specifically, we would submit that the way it was presented preserved the argument. Even though there may not be magic language to say I specifically object to this, we would it's sufficient to use that term of art to preserve that objection. We appreciate your presentation. Thank you. Thank you, Your Honor. We appreciate you all making the trip from Florida as well. It's always good to see you. So now I'll call the case of